UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

MAPFRE ATLAS COMPANIA DE SEGUROS
S.A., a/s/o TECNOMEGA C.A.,

        Plaintiff,                15 Civ. 7876

  -against-                      OPINION

M/V LOA, in rem,

  -and-

COMPANIA CHILENA DE NAVIGACION
INTEROCEANICA S.A. and
GENSHIPPING CORP., in personam,

        Defendants.

------------------------------------X



A P P E A R A N C E S:

    Attorney for Plaintiff

    LAW OFFICES OF THOMAS M. GRASSO, LLC
    8 Willow Street
    Cranford, NJ 07016-1855
    By: Thomas M. Grasso, Esq.


    Attorney for CCNI

    MAHONEY & KEANE, LLP
    40 Worth Street, 10th Floor
    New York, NY 10013
    By: Garth S. Wolfson, Esq.

**Sweet, D.J.**

Plaintiff Mapfre Atlas Compania de Seguros S.A. ("Mapfre" or the "Plaintiff") as subrogee of Tecnomega C.A. ("Tecnomega") has moved pursuant to Rule 56 of the Federal Rules of Civil Procedure for partial summary judgment with respect to the port-to-port bill of lading issued to Tecnomega by Defendants Compania Chilena De Navigacion Interoceanica S.A. ("CCNI"), Genshipping Corp. ("Genshipping"), and Genshipping's vessel M/V LOA (together, "Defendants"). CCNI has moved pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for partial judgment on the pleadings. At issue is whether or not Plaintiff's recovery under the Carriage of Goods by Sea Act of 1936, ch. 228, 49 Stat. 1207 (1936) (codified as a note to 46 U.S.C. § 30701) ("COGSA")[1], is limited to the per package limitation of $500.

Based on the facts and conclusions set forth below, CCNI's motion for partial summary judgment on the pleadings is granted and Plaintiff's motion for partial summary judgment is denied.

---

[1] Until 2006, COGSA was codified at 46 U.S.C. § 1300 *et. seq.*

1

## Prior Proceedings

On October 6, 2015, Plaintiff filed its complaint (the "Complaint") seeking damages of $126,862.28 for breach of carrier duties under COGSA and a maritime bill of lading contract arising out of the disappearance and non-delivery of 491 out of 989 cartons of computer and printer pieces (all together, the "Goods") stowed within a single shipping container, numbered TCNU 811823-2 (the "Container"). (See Compl., Dkt. 1.) The Container was carried by Defendants aboard the vessel M/V LOA from Port Everglades, Florida to Guayaquil, Ecuador, in October 2014. (See Compl. at ¶ 1.)

On March 3, 2017, CCNI filed the instant motion for judgment on the pleadings. (Dkt. 15.) On March 31, 2017, Plaintiff filed the instant motion for partial summary judgment. (Dkt. 18.) Both motions were heard and marked fully submitted on May 3, 2017.

## The Facts

The facts are alleged in the Complaint, Plaintiff's Rule 56.1 Statement of Material Facts, (Dkt. 20), and CCNI's

Declaration Pursuant to Local Rule 56.1(b), (Dkt. 23). The material facts do not appear in dispute.

Plaintiff's Complaint alleges that a shipment of computers and printers in 989 cartons was delivered to CCNI and, in turn, Genshipping, for shipment from Miami, Florida, the Place of Receipt, to Port Everglades, Florida, the Port of Loading, and, ultimately, to Guayaquil, Ecuador, the Port of Discharge and Place of Delivery. (See Compl. at ¶¶ 11-17.) The Goods were shipped aboard the vessel M/V LOA, which arrived in Ecuador around October 6, 2014. (Compl. at ¶ 17.) Around October 17, 2014, upon inspection of the Container, Tecnomega discovered 491 cartons of Goods missing. (Compl. at ¶ 22.) The Complaint alleges that Plaintiff sustained $126,862.28 in damages. (Compl. at ¶ 27.)

A bill of lading, No. BL-USMIA-006901879-8 (the "Bill of Lading"), was issued by CCNI to cover Defendants' shipment of the Container. (See Declaration of Thomas M. Grasso dated March 31, 2017 ("Grasso Decl."), Ex. C, Dkt. 19; Compl. at ¶ 17.) The Bill of Lading contains the terms of carriage agreed between the parties and sets forth, in relevant part, the following

description as to the Container's contents:

| MARKS & Nos / CONTAINER & Seal Nos | N° OF PKGS. | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT GROSS (KG) | MEASUREMENT VOLUME (CBM) |
|---|---|---|---|---|
| TCNU 811823-2 40FT<br>SN# 778700 CY/CY<br>602876<br><br>AS ADDRESSED | 1 | 1X40'HC CONTAINER S.T.C.<br>989 PIECES<br>COMPUTERS PARTS<br><br>AES ITN<br>X20140930281415<br>X20140930281414<br>X20140930281413<br><br>QT-USMIA-010429681<br>TLI # 8471-00-0091-0005<br><br>TERMS AND CONDITIONS<br>------------------<br>1) THESE COMMODITIES, TECHNOLOGY OR<br>SOFTWARE WERE EXPORTED FROM THE<br>UNITED STATES IN ACCORDANCE WITH<br>THE EXPORT ADMINISTRATION<br>REGULATIONS. DIVERSION CONTRARY<br>TO US LAW PROHIBITED<br>*** CONTINUE ON NEXT PAGE *** | 9,102.000 | 39.644 |

(Bill of Lading at 1.) The Bill of Lading details the following freight rating and charge amounts:

| FREIGHT RATING AND CHARGES | RATES | PER | PREPAID | COLLECT |
|---|---|---|---|---|
| OCEAN FREIGHT | 1,080.00 | PER PA | 1,080.00 USD | |
| BUNKER RECOVERY COST | 750.00 | PER PA | 750.00 USD | |
| IFO LOW SULPHUR SURCHARGE | 20.00 | PER PA | 20.00 USD | |
| PANAMA CANAL IMPROVEMENT S | 370.00 | PER PA | 370.00 USD | |
| ORIGIN INLAND (INLD/FEED) | 308.00 | PER PA | 308.00 USD | |
| PANAMA CANAL SURCHARGE | 100.00 | PER PA | 100.00 USD | |
| TERMINAL HANDLING AT DEST | 135.00 | PER PA | | 135.00 USD |
| TOTALS | | | 2,628.00 USD | 135.00 USD |

| SHIPPERS DECLARED VALUE $<br>EXCESS VALUATION: Refer to Clause 19, on reverse Bill of Lading | EX-RATE | FREIGHT PAYABLE AT<br>MIAMI FL | IN LOCAL CURRENCY |
|---|---|---|---|

(Id. at 2.)

The Bill of Lading also contains the following relevant provisions. Under Clause 19, titled "Package Limitation," the Bill of Lading specifies:

> If the Goods are consolidated in any container or similar article of transport, the number of packages or units shall, for the purposes of Clause 19.2, be those enumerated on the face of this Bill of Lading as having been packed in such article of transport.

4

> Otherwise, such article of transport shall be
> considered the package or unit. If the Goods are not
> shipped in packages or are shipped in bulk the package
> or unit shall mean the customary freight unit for such
> Goods.

(Id. at cl. 19.3.) Under Clause 21, titled "Law and Jurisdiction," the Bill of Lading contains a forum selection clause:

> In case of shipments to or from the United States,
> this Bill of Lading shall be subject to the Carriage
> of Goods by Sea Act [of 1936] . . . and US law shall
> apply and any Dispute shall be subject to the
> exclusive jurisdiction of the United States Federal
> Court of the Southern District of New York.

(Id. at cl. 21.1.3.)

**Applicable Standards**

In deciding a motion under Rule 12(c) of the Federal Rules of Civil Procedure, courts apply "the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004) (internal quotations and citations omitted). The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v.

5

Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 235-36 (1974)).

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plaintiffs must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. Though the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). In connection with motions to dismiss, the Second Circuit has held that documents referenced in or integral to a complaint may be considered. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)

Summary judgment under Rule 56(c) is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248 (1986). The relevant inquiry on application for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

A court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. Westinghouse Elec. Corp. v. N.Y. City Transit Auth., 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990) (quoting Anderson, 477 U.S. at 249). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (emphasis in original). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

**CCNI's Liability Is Limited To $500**

The question presented here is how to define the term "package" under COGSA, the maritime shipper's version of the

7

enduring question, "What's in a name?" WILLIAM SHAKESPEARE, ROMEO AND JULIET act 2, sc. 2. Under Plaintiff's reading, each of the "989 pieces computers parts [sic]" listed on the Bill of Lading constitutes a single package, (Bill of Lading at 1); under CCNI's reading, the single Container into which all 989 pieces were loaded constitutes a single package. Whether a "piece" is or is not a "package" under COGSA has liability consequences amounting to thousands of dollars.

COGSA's provisions apply to "all contracts for carriage of goods by sea between the ports of the United States and the ports of foreign countries," and the parties do not dispute its application here. Nippon Fire & Marine Ins. Co. v. M.V. Tourcoing, 167 F.3d 99, 100 (2d Cir. 1999) (per curiam). Under COGSA, a carrier's liability is limited to $500 "per package" or "per customary freight unit," if goods are not shipped in packages. COGSA § 4(5).[2] A carrier cannot limit its liability

---

2     Section 4(5) reads in full:

> Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill

8

below COGSA's statutory minimum. Id. COGSA's limitation of liability is applicable to damage which occurs "from the time when the goods are loaded on to the time when they are discharged from the ship." Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 29 (2004) (quoting 46 U.S.C. § 1301(e)) (internal quotation marks omitted).

One challenge is that neither COGSA nor Congress provided the "meaning or scope of the word 'package.'" Binladen BSB Landscaping v. M.V. Nedlloyd Rotterdam, Her Engines, Boilers, Etc., Nedlloyd Lijnen B.V. (Nedlloyd Lines), 759 F.2d 1006, 1011 (2d Cir. 1985). The resultant trouble in the absence of relevant guidance is well-documented. See, e.g., Orient Overseas Container Line, Ltd. v. Sea-Land Serv., Inc., 122 F. Supp. 2d 481, 486 (S.D.N.Y. 2000) ("If it was the COGSA drafters' purpose

---

of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.

By agreement between the carrier, master, or agent of the carrier, and the shipper another maximum amount than that mentioned in this paragraph may be fixed: Provided, That such maximum shall not be less than the figure above named. In no event shall the carrier be liable for more than the amount of damage actually sustained.

Neither the carrier nor the ship shall be responsible in any event for loss or damage to or in connection with the transportation of the goods if the nature or value thereof has been knowingly and fraudulently misstated by the shipper in the bill of lading.

9

to avoid the pains of litigation, they must be rolling in their graves. Myriad courts have struggled with what a COGSA package is.") (internal quotation marks omitted).

In the Second Circuit, different rules apply to cases where a party contests that a shipping container constitutes a package versus those where neither party does. See Monica Textile Corp. v. S.S. Tana, 952 F.2d 636, 640 (2d Cir. 1991) (rejecting "any notion that container and non-container cases were interchangeable" and noting that the cases have "separate lines of authority"). As CCNI contends that the Container into which Mapfre's computer part pieces were placed is a COGNA package, this is such a case.

"The question of what constitutes a COGSA package . . . is largely and in the first instance a matter of contract interpretation." Allied Chem. Int'l Corp. v. Companhia de Navegacao Lloyd Brasileiro, 775 F.2d 476, 485 (2d Cir. 1985) (citations omitted); see also Binladen, 759 F.2d at 1012 ("[T]he touchstone of our analysis should be the contractual agreement between the parties, as set forth in the bill of lading."). Looking to bills of lading in cases dealing with shipping containers, the Second Circuit has instructed that "where the bill of lading expressly states the number of containers as the

10

number of packages, the container will be deemed the COGSA package even if the bill of lading also notes the number of units within the container, so long as the units are not referred to as 'packages.'" Norwich Union Fire Ins. Soc., Ltd. v. Lykes Bros. S.S. Co., 741 F. Supp. 1051, 1057 (S.D.N.Y. 1990) (citing Binladen, 759 F.2d at 1015). "[W]hen the bill of lading does not clearly indicate an alternative number of packages, the container must be treated as a COGSA package if it is listed as a package in the bill of lading and if the parties have not clearly specified that the shipment is one of 'goods not shipped in packages.'" Id. (citing Binladen, 759 F.2d at 1015-16).

Looking at the Bill of Lading, under the "No. of Pkgs." column, the number "1" is clearly stated. (Bill of Lading at 1.) However, "designation of the container as a package alone is insufficient" to establish the number of COGSA packages. St. Paul Fire & Marine Ins. Co. v. Sea-Land Serv., Inc., 735 F. Supp. 129, 131 (S.D.N.Y. 1990) (noting that under Binladen, listing the container as a package and failing to describe objects reasonably understood from the description as being packages was necessary). Looking to the "Description of Packages and Goods" column corresponding to that single package, the Bill of Lading describes said package as "1x40'HC CONTAINER S.T.C." with "989 PIECES COMPUTERS PARTS." (Id.) Latching onto this

11

description, Plaintiff contends that courts have accepted the term "pieces," when included in a shipping package's description, to constitute COGSA packages. See Transatlantic Marine Claims Agency, Inc. v. M/V MASON LYKES, No. 92 Civ. 1846 (LMM), 1993 WL 119780, at *3-4 (S.D.N.Y. Apr. 9, 1993). While Plaintiff has identified authority demonstrating times when pieces were found to mean packages, such is not the case here.

The facts of Transatlantic are different and illustrative. In Transatlantic, the court was dealing with a handful of printing presses and spare parts that were clearly parsed out between four different shipping containers and it was undisputed that the pieces were "packed/wrapped in clear plastic". See Transatlantic, 1993 WL 119780, at *2, *4. Here, that fact is disputed and unestablished. The only evidence presented as to the shipping preparation of the 989 pieces is a photograph Plaintiff pasted into one of its reply briefs that Plaintiff alleges shows that the Goods were boxed before being placed within the Container. (See Pl.'s Mem. in Reply at 5, Dkt. 25.) Even taking the picture as true, it does not establish that 989 separate boxes, representing 989 separate computer part pieces, were put into the shipping container as Plaintiff claims. Contra Marisa v. M/V CMA LA TOUR, No. 05 Civ. 2962 (NRB), 2006 WL 2521269, at *4-5 & n.10 (S.D.N.Y. Aug. 29, 2006) (accepting

12

sworn declaration evidence that the noted "74 items household goods" were "boxed and protectively wrapped units . . . actually placed inside the shipping container" and citing Transatlantic). Furthermore, the picture does not show whether the pieces were evenly distributed between the boxes or whether they were "packaged singly or in groups of up to 25 or more." Binladen, 759 F.2d at 1014 (rejecting container's description as constituting individual packages when there was lack of clarity as to how items were packaged). One inconclusive picture is not enough.

Without additional evidence, the Bill of Lading cannot support Plaintiff's position. The Bill of Lading's description does not indicate how the computer part pieces are packaged. The Bill of Lading does not even refer to the computer part pieces as packages. What the Bill of Lading does indicate is that the computer part pieces are said to be contained within a single high-cube container. See Norwich Union, 741 F. Supp. at 1057 (finding a container a COGSA package when the bill of lading "bill of lading unambiguously states that the container is the package: the column headed 'Description of Package and Goods' states: '1 x 20' open top container said to contain one new combi aisle ranger . . . .'"). In sum, the Bill of Lading does not "clearly indicate an alternative number of packages" while

13

strongly indicating that the parties understood the shipment to constitute a single package. Binladen, 759 F.2d at 1013 (distinguishing cases where "bill of lading listed not only the number of packages but also the number of items qualifying as packages (*i.e.* connoting preparation in some way for transport, such as 'bundles,' 'cartons,' or the like)"); see id. at 1015 n.10 (citing to Marcraft Clothes, Inc. v. M/V "Kurobe Maru", 575 F. Supp. 239, 242-43 (S.D.N.Y. 1983) and noting that, had a lower court found a bill of lading whose number of packages was listed as "1 container" and its description of goods was "4,400 Sets of Men's Suits with Vest," the decision would likely have been reversed); Aviles v. S.S. SAN JUAN, No. 88 Civ. 6998 (WK), 1991 WL 249898, at *3 (S.D.N.Y. July 8, 1991) (holding that listing a container's contents as "49 pieces" as a single package because the "designation of the shipment as comprising 249 'pieces'—rather than 'cases', 'cartons', or 'packages'—gave no indication of whether or how such pieces had been packaged").[3]

While the Bill of Lading contains no independent definition of "package," Plaintiff points to language from the document's

---

[3]  It is noteworthy that in Plaintiff's Complaint and motion papers, the Goods are regularly referred to as "989 cartons" (See, e.g., Compl. at ¶ 1; Pl.'s Mem. in Supp. at 3, Dkt. 21.) That term appears nowhere in the Bill of Lading or its description of the Goods; had it done so, Plaintiff's case would have been stronger.

14

Clause 19.3 to augment the document's definition of "package" in support of its position. The argument, however, is quickly dismissed. Clause 19.3 states that, "If the Goods are consolidated in any container or similar article of transport, the number of packages or units shall, for the purposes of Clause 19.2, be those enumerated on the face of this Bill of Lading as having been packed in such article of transport." (Bill of Lading at cl. 19.3 (emphasis added)). Clause 19.2 specifically deals with instances when the Hague Visby Rules apply. (Id. at cl. 19.2.) Pursuant to Clause 21, which details which laws apply in which in cases, the Bill of Lading clearly states that when shipments are to or from the United States, as is the case here, COGSA applies. (See id. at cl. 21.1.3.) As such, the parameters defining a "package" under Clause 19.3 are irrelevant here.

Lastly, even in the alternative that the Container were not viewed as a COGSA package and the computer part pieces were viewed as "goods not shipped in packages," Mitsui & Co. v. Am. Exp. Lines, Inc., 636 F.2d 807, 821-22 (2d Cir. 1981), the Bill of Lading would still dictate a finding for CCNI. "Absent any agreement in the bill of lading, goods placed in containers and not described as separately packaged are considered 'goods not shipped in packages,' to which the $500 liability limit applies

15

per 'customary freight unit.'" Norwich Union, 741 F. Supp. at 1057 (citation omitted); see COGSA § 4(5). "Customary freight unit" is defined not as "the standard unit of measure used in the industry, but the actual freight unit used by the parties to calculate freight for the shipment at issue." FMC Corp. v. S.S. Marjorie Lykes, 851 F.2d 78, 80 (2d Cir. 1988).

Here, the freight rate is set as "per [package]" and is paid in one lump sum for what is calculable as a single package. (See Bill of Lading at 2 (stating, *inter alia*, that the "Ocean Freight" rate was set at $1,080.00 per package and that Plaintiff prepaid a total of $1,080.00 with nothing left to collect for that charge).) This not only supports the position that the parties agreed to the shipment of a single COGSA package, but sets the established freight rate unit as one single package and, consequently, the COGSA statutory limit at $500. See Goga v. Zim Am. Integrated Shipping Servs. Co., No. 06 Civ. 5783 (LAK) (GWG), 2008 WL 2875059, at *8 (S.D.N.Y. July 25, 2008) (stating "the front of the Bill of Lading lists the freight rate as $1150 per unit, and the freight listed as prepaid on the Bill of Lading is $1150, with no amount due to be collected for freight charges" and concluding that "the parties intended there to be one 'customary freight unit'" and liability limited to $500); D.W.E. Corp. v. T.F.L. Freedom, 704 F. Supp.

16

380, 386 (S.D.N.Y. 1989) ("Thus, examination of the tariff and Bill of Lading yield the conclusion that the 'customary freight unit' under this contract for the goods shipped by plaintiffs is a 40' container. As there is no ambiguity, the parties are bound to the freight unit adopted in the Bill of Lading and tariff.").

## Conclusion

For the reasons set forth above, Plaintiff's motion for partial summary judgment is denied and CCNI's motion for partial judgment on the pleadings is granted. CCNI's liability is limited to $500.

It is so ordered.

**New York, NY**
**August 1, 2017**

_____
ROBERT W. SWEET
U.S.D.J.